**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BRIDGET WESTON,** | |
| **Plaintiff,** | **Civil Action No. 17-6028 (ES)** |
| **v.** | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Bridget Weston's ("Plaintiff's") appeal of the Commissioner of Social Security's (the "Commissioner's" or "Defendant's") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 423 ("the Act"). (*See generally* D.E. No. 1). The Court has subject-matter jurisdiction under 42 U.S.C. §§ 405(g) & 1383(c)(3). And the Court decides this matter without oral argument. *See* D.N.J. Civ. R. 78.1(b). For the reasons discussed below, the Court VACATES and REMANDS the decision of the Commissioner.

**I. Factual and Procedural Background**

On February 19, 2014, Plaintiff completed applications for DIB and SSIB, alleging disability beginning September 1, 2012. (D.E. No. 7, Administrative Record ("R.") at 242–46 & 249–55). The applications were initially denied in April 2014 and denied again on reconsideration in August 2014. (*Id.* at 82–104 & 105–30). Plaintiff requested a hearing, which was held before Administrative Law Judge Leah Farrell ("the ALJ") on June 8, 2016. (*Id.* at 37; *see generally id.* at 37–81). The ALJ issued partially favorable decision on July 18, 2016, ruling that Plaintiff "was

not disabled prior to June 18, 2015,"[1] because she "had the residual functional capacity to perform the full range of sedentary work" and "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.* at 21 & 28; *see generally id.* at 17–29). Plaintiff appealed the partially unfavorable decision; the Appeals Council issued a final decision affirming the ALJ's ruling and denying Plaintiff DIB and SSIB. (*Id.* at 1–6).

Plaintiff filed the instant appeal on August 10, 2017. (*See generally* D.E. No. 1). The general contentions of the brief in support of the appeal (D.E. No. 14 ("Pl. Br.")) are that the Commissioner (1) "improperly evaluated the medical evidence" (*see id.* at 19–25); and (2) "erred as a matter of law in finding that Plaintiff can perform light work and failed in not giving an accurate portrait of Plaintiff's impairments to the vocational expert" (*see id.* at 25–29). Defendant filed an opposition brief (D.E. No. 17), to which Plaintiff replied (D.E. No. 18).

## II. Legal Standards

### A. Standard Governing Benefits

To receive DIB or SSIB under the Act, a claimant must show that he is "disabled" within the Act's definition and that he was insured under the relevant program "at the time of onset of his disability." *Kelley v. Barnhart*, 138 F. App'x 505, 507 (3d Cir. 2005).[2] Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The individual's physical or mental impairment, furthermore, must be "of such

---

[1] The decision was "partially favorable" because the ALJ ruled that Plaintiff "was not disabled prior to June 18, 2015, but became disabled on that date and ha[d] continued to be disabled through the date of th[e] decision." (R. at 21 & 28).

[2] Additionally, he must satisfy the insured status requirements enumerated in 42 U.S.C. § 423(c).

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four [and the] Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 416.920(a)(4). The Court details the steps below.

*Step One*. First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 416.920(a)(4)(i) & 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 416.920(b) & 404.1520(b).

*Step Two*. Second, the claimant must show that his medically determinable impairment or a combination of his impairments was "severe" as of the date last insured ("DLI"). 20 C.F.R. §§ 416.920(a)(4)(ii) & 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 416.920(c) & 404.1520(c). An "impairment or combination of impairments" is *not* "severe" *unless* it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

**Step Three**.  Third, the claimant must show, based on medical evidence, that as of the DLI, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(a)(4)(iii) & 404.1520(a)(4)(iii).

**Step Four**.  Fourth, the claimant must show that, as of the DLI, he lacked the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv) & 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If as of the DLI the claimant lacked the RFC to perform his past relevant work, the analysis proceeds.  *See, e.g.*, *id.* at 429.

**Step Five**.  Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  20 C.F.R. §§ 416.920(a)(4)(v) & 404.1520(a)(4)(v).  If the Commissioner finds that the claimant is capable of performing jobs that exist in significant numbers in the national economy, DIB and SSIB will be denied.  *See id.*

**B.    Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner."  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  But "[t]he findings of the Commissioner . . . as to any fact*, if supported by substantial evidence*, shall be conclusive . . . ."  42 U.S.C. § 405(g) (emphasis added).  "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Chandler*, 667 F.3d at 359.  And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea*, 370 F.3d at 360.

As observed above, the Court is bound by the ALJ's findings of fact if supported by substantial evidence—"even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). (Even an ALJ's "brief treatment" of a DIB claim, in a manner that "could be improved upon" and would cause the Court of Appeals to "express concern," could be upheld under the substantial evidence standard. *See, e.g.*, *Baerga v. Richardson*, 500 F.2d 309, 312–13 (3d Cir. 1974) (citing *United States v. Crescent Amusement Co.*, 323 U.S. 173, 185 (1944)).) "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

But "[a]lthough the ALJ . . . weigh[s] the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). Notably, that rule "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the rule] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing, 220 F.3d at 120). Therefore, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment," for instance, "are insufficient." *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

**III.    The ALJ's Decision**

At Step One, the ALJ concluded that Plaintiff had last met the insured status requirements of the Act on December 31, 2015 (the "DLI"); and that Plaintiff had "not engaged in substantial gainful activity since the alleged onset date" of September 1, 2012.  (R. at 23).

At Step Two, the ALJ concluded that through the DLI Plaintiff suffered from several severe impairments:  "HIV, obesity, asthma, degenerative disc disease, arthritis, and hypertension."  (*Id.*). In contrast, the ALJ concluded that Plaintiff's "diabetes and anxiety do not rise to the level of being 'severe' impairments."  (*Id.*).

At Step Three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations.  (*Id.* at 24).  More specifically, the ALJ found that Plaintiff's "HIV infection did not meet or equal the severity required under Medical Listing 14.08" and Plaintiff's "asthma d[id] not rise to the level of meeting the chronic obstructive pulmonary disease criteria of 3.02A."  (*Id.* at 24).  Regarding obesity, the ALJ quoted SSR 02–1p[3] and asserted that she had "fully considered obesity in the context of the overall record in making [her] decision."  (*Id.*).

At Step Four, the ALJ found that Plaintiff "ha[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a),"[4] but observed that Plaintiff would be limited in several ways, such as being "limited to occasional use of ramps and stairs," and would be unable to perform her past relevant work.  (*Id.* at 25 & 27).

At Step Five, the ALJ relied on the testimony of a vocational expert, who had testified that

---

[3]    "SSR 02–1p" is Social Security Ruling 02–1p, 2000 WL 628049, 67 Fed. Reg. 57859 (Sept. 12, 2002).  *See Santini v. Comm'r Of Soc. Sec.*, 413 F. App'x 517, 519 (3d Cir. 2011).  The Court will further discuss SSR 02–1p below.

[4]    The ALJ also found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not fully supported" by the record.  (R. at 27).

Plaintiff "would have been able to perform the requirements of representative occupations such as document preparer with 2,832,010 jobs in the national economy, charge account clerk with 192,360 jobs in the national economy, and food and beverage order clerk with 200,210 jobs in the national economy." (*Id.* at 28 (citations omitted)).  Therefore, the ALJ ruled that "[p]rior to June 18, 2015, a finding of 'not disabled' is . . . appropriate." (*Id.*).

## IV.    Discussion

As noted above, Plaintiff asserts that the ALJ "improperly evaluated the medical evidence." (*See* Pl. Br. at 19–25).  In support of that conclusion, Plaintiff submits that the ALJ "fail[ed] to properly consider [P]laintiff's obesity." (*See id.* at 20).  More specifically, Plaintiff contends that the ALJ's finding as to Plaintiff's "obesity was merely conclusory and the [ALJ] failed to properly assess [it] as required by SSR 02-1(p)." (*Id.* at 20).   For the following reasons, the Court concurs.

The ALJ mentions obesity twice in her decision.  First, the ALJ concluded at Step Two that Plaintiff's obesity is a "severe impairment." (R. at 23).  Second, at Step Three, the ALJ stated:

> Although there is no specific medical listing regarding obesity, I have evaluated that impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 02-1p, including the references in the listings contained in sections l.00Q, 3.00I, and 4.00F. As SSR 02-1p states, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." With that in mind, I have fully considered obesity in the context of the overall record in making this decision.

(*Id.* at 24).  The ALJ does not mention or consider obesity elsewhere in her decision. (*See generally id.* at 17–36).[5]

---

[5]     Defendant contends that "in determining the RFC, the ALJ accommodated Plaintiff's obesity by limiting her to a restricted range of sedentary work – with a detailed and comprehensive RFC assessment." (D.E. No. 17 at 12 (citing R. at 25)).  But the ALJ does not mention obesity when "determining the RFC." (*See* R. at 25–27).  As observed

SSR 02–1p "instructs adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity" and reminds them to consider "the combined effects of obesity with other impairments when making disability determinations." *Santini v. Comm'r Soc. Sec.*, 413 F. App'x 517, 519–20 (3d Cir. 2011) (internal quotation marks omitted). "Hence, *an ALJ must meaningfully consider* the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function *at step three and at every subsequent step*." *Diaz*, 577 F.3d at 504 (emphases added). Meaningful consideration requires an ALJ to "clearly set forth the reasons for his decision"—including a "discussion of the evidence" and an "explanation of reasoning." *See id.* (quoting *Burnett*, 220 F.3d at 119–20). As observed above, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment," for instance, "are insufficient." *See id.*; *Padilla v. Astrue*, No. 10-4968, 2011 WL 6303248, at *6 (D.N.J. Dec. 15, 2011) ("Consideration requires more than simply stating conclusions of ultimate findings or using boiler-plate language.").

In *Santini*, the Court of Appeals affirmed the ruling of an ALJ who had "acknowledged [the claimant]'s obesity at step two, and then determined, at steps three and four, that, even when [the claimant]'s seizures, sleep apnea, and diabetes were considered in combination with her obesity, she did not meet or equal the criteria of any of the medical listings, and was able to work." 413 F. App'x at 520. "Furthermore," the claimant had "failed to provide any medical evidence indicating that her obesity has a significant effect on her functional capacity." *Id.* In *Diaz*, in contrast, "[t]he ALJ acknowledged [the obesity] impairment at step two, but failed to consider its

below, "it is unclear from the ALJ's decision whether obesity was considered [at all] in assessing [Plaintiff]'s residual functional capacity." *See Padilla v. Astrue*, No. 10-4968, 2011 WL 6303248, at *9 (D.N.J. Dec. 15, 2011).

impact, in combination with her other impairments, at step three." *See* 577 F.3d at 503. The Court of Appeals vacated and remanded. *Id.* at 506–07.

Here, Plaintiff "asserted—and the ALJ specifically determined—that [her] obesity constituted a severe impairment." *See Diaz*, 577 F.3d at 504; (R. at 23). But as observed above, "the ALJ's *entire obesity analysis* consist[ed] of," *see Padilla*, 2011 WL 6303248, at *7 (emphasis added), (1) quotation of SSR 02–1p; and (2) conclusory assertion that the ALJ "ha[s] evaluated" and has "fully considered" Plaintiff's obesity. (*See* R. at 24; *see generally* R. at 17–36). Hence the ALJ's "consideration of obesity [wa]s . . . merely a conclusory statement and evades any meaningful judicial review." *See Rodriguez v. Comm'r of Soc. Sec.*, No. 17-9429, 2019 WL 397983, at *4 (D.N.J. Jan. 30, 2019). "The ALJ did not engage in a discussion of the evidence concerning Plaintiff's obesity nor did [s]he explain how Plaintiff's obesity factored into h[er] conclusions." *See id.* "Similar obesity analyses have been rejected by this Court." *See id.* (citing *Alicea v. Comm'r of Soc. Sec.*, No. 13-7302, 2014 WL 6978457, at *7 (D.N.J. Dec. 8, 2014); *Padilla*, 2011 WL 6303248, at *7). For instance, in *Padilla*, the ALJ had similarly, conclusorily asserted that he or she "ha[d] evaluated" and "fully considered obesity in the context of the overall record evidence." *See, e.g.*, 2011 WL 6303248, at *7.

Moreover, the Court "cannot conclude . . . that [Plaintiff]'s obesity had no impact, alone or in combination with her other impairments, on her workplace performance." *See Diaz*, 577 F.3d at 504. In fact, "Plaintiff complains of impairments which would seem, 'as a matter of common sense,' to have been plausibly exacerbated by her obesity." *See Rodriguez*, 2019 WL 397983, at *4 (quoting *Diaz*, 577 F.3d at 504). Asthma and degenerative disc disease—both of which the ALJ found to be "severe" impairments—are two examples. (*See* R. at 23).

Accordingly, the Court "must vacate and remand . . . . Surely the ALJ, having recognized

obesity as an impairment, should determine in the first instance whether, and to what extent, [Plaintiff]'s obesity, in combination with her [other impairments], impacted her workplace performance." *See Diaz*, 577 F.3d at 505. The ALJ "*must meaningfully consider* the effect of [Plaintiff's] obesity, individually and in combination with her impairments, on her workplace function *at step three and at every subsequent step*." *See id.* at 504 (emphases added). For instance, the ALJ must make clear from her decision "whether obesity was considered in assessing [Plaintiff]'s residual functional capacity." *See, e.g.*, *Padilla*, 2011 WL 6303248, at *9.

## IV.   Conclusion

For the foregoing reasons, the Court  VACATES  the decision of the Commissioner and REMANDS this matter to the Commissioner for further analysis in accordance with this Opinion.

An appropriate Order will follow.


*s/Esther Salas*
**Esther Salas, U.S.D.J.**